**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| **BILLY F. BRITT,** ) | |
| ) | |
| ) | **CASE NO. 1:07CV 696** |
| **Plaintiff,** ) | |
| ) | **JURY DEMAND** |
| **v.** ) | |
| ) | |
| **U.S. HELICOPTER, d/b/a HELICOPTER** ) | |
| **SUPPORT COMPANY, INC.** ) | |
| ) | |
| **Defendant.** ) | |

### <u>PLAINTIFF'S MOTION TO AMEND COMPLAINT</u>

COMES NOW Plaintiff, Billy Britt, and pursuant to Rules 15(a) and 19(a), of the Federal Rules of Civil Procedure, respectfully moves this honorable Court for permission to amend the complaint to add Bell Aerospace Services, Inc. d/b/a U.S. Helicopter, Inc. as a defendant.  As grounds therefore, Plaintiff states as follows:

1. On August 1, 2007, Plaintiff filed a complaint against Defendant U.S. Helicopter Inc. d/b/a Helicopter Support Company (hereinafter "Defendant").   Based on information obtained from the Secretary of State, Plaintiff's complaint was served on the registered agent for Defendant, G. David Johnston.

2. On August 29, 2007, Defendant filed a Motion to Dismiss asserting that it was not the proper party.

3. On September 14, 2007, in reply to Plaintiff's Response to Defendant's Motion to Dismiss, Defendant indicated that Bell Aerospace Services, Inc. was the proper party.

4.  At the time that the complaint was filed, neither Plaintiff Britt nor his counsel had

    knowledge of the representations in Defendant's Motion to Dismiss or in its September

    14th reply.

5.  In light of the foregoing, it is apparent that complete relief cannot be accorded unless

    Plaintiff is allowed to amend his complaint adding Bell Aerospace Services, Inc. d/b/a

    U.S. Helicopter as a defendant.


    WHEREFORE, Plaintiff respectfully requests that the Court grant his motion to amend

the Complaint to add Bell Aerospace Services, Inc. d/b/a U.S. Helicopter as a Defendant.

Respectfully submitted this 17th day of September, 2007.


                                            /s/ Maricia Woodham
                                            MARICIA WOODHAM (*BEN050*)
                                            One of the Attorneys for Plaintiff


**OF COUNSEL:**

SABEL & SABEL, P.C.
Hillwood Office Center
2800 Zelda Rd.; Suite 100-5
Montgomery, AL 36106
TELEPHONE:        (334) 271-2770
FACSIMILE:        (334) 277-2882


2

**CERTIFICATE OF SERVICE**

     I, Maricia Woodham, Esq., do hereby certify that a true and correct copy of the foregoing has been furnished by electronic filing on this 17th day of September, 2007 to:

Mitchell G. Allen, Esq.
Jeffrey Allen Lee, Esq.
Maynard, Cooper & Gale, P.C.
1901 Sixth Avenue North, Ste. 2400
Birmingham, AL 35203

                    /s/ Maricia Woodham
                    OF COUNSEL

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| BILLY F. BRITT, | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | |
| | ) | **CASE NO. CV1:07CV696** |
| U.S. HELICOPTER, d/b/a HELICOPTER | ) | |
| SUPPORT COMPANY, INC. and | ) | |
| BELL AEROSPACE SERVICES, INC., d/b/a | ) | |
| U.S. HELICOPTER, | ) | |
| | ) | |
| **Defendants.** | ) | |

## AMENDED COMPLAINT

### I. INTRODUCTION

1.    This is a civil rights action for legal and equitable relief to redress the deprivation of rights guaranteed by the Constitutions and laws of the United States and the State of Alabama, *i.e.*, unlawful race discrimination and retaliation in employment, violations of the American with Disabilities Act (ADA), and violations of state tort law.

2.    Plaintiff's claims are based upon Title VII of the Civil Rights Act of 1964 as amended, codified at 42 U.S.C. §§ 1981a & 2000(e), *et seq.*, including 42 U.S.C. § 2000e-3(a) (retaliation); and pursuant to 42 U.S.C. §§ 2000e-5(f)(3) & (g); 42 U.S.C. § 1981.

3.    Plaintiff's disability claims are made pursuant to 42 U.S.C. §12101, *et seq.*

## II.  JURISDICTION AND VENUE

4.  This Court has jurisdiction over this cause pursuant to 28 U.S.C. §§ 1331 and 1343.  Jurisdiction over Plaintiff's claims for injunctive relief, costs, expenses and attorney fees is additionally conferred by 42 U.S.C. § 1988.  Further, jurisdiction is invoked pursuant to §12117 of the Americans with Disabilities Act, 42 U.S.C. 12101 *et. seq.* 42 U.S.C. §1981a.  .  In addition, the jurisdiction of this Court is pursuant to 28 U.S.C. §§ 2201 & 2202 (Declaratory Judgment Act).

5.  Plaintiff has exhausted the necessary administrative remedies.  Prior to filing this civil action, Plaintiff timely filed a written charge with the Equal Employment Opportunity Commission ("EEOC") within 180 days of the discriminatory acts asserting unlawful discrimination.  Plaintiff filed his EEOC charge on September 20, 2005.  This civil action is filed within 90 days of the EEOC issued Right to Sue letter dated May 3, 2007.

6.  Jurisdiction over Plaintiff's claims based on Alabama law exists under the Doctrine of Supplemental Jurisdiction.  28 U.S.C. § 1367.

7.  All acts complained of herein relate to Plaintiff's place of employment within the Middle District of Alabama and venue is proper in the Middle District of Alabama. 28 U.S.C. § 1391.

## III.  THE PARTIES

8.  Billy F. Britt is an African American male resident of Russell County, Alabama and a citizen of the United States.  Britt had been employed with U.S. Helicopter for five and one-half years until his unlawful termination on August 3, 2005.

9.      Defendants U.S. Helicopter d/b/a the Helicopter Support Company is an employer that provides helicopter depot maintenance requirements for the U. S. Army, National Guard, Department of State and foreign military sales.   Defendant operated a maintenance shop in Ozark, Alabama.  Defendant is an "employer" within the meaning of Title VII and the ADA, and is subject to suit under all of the claims alleged herein.

10. Defendant Bell Aerospace Services, Inc. d/b/a U.S. Helicopter, a wholly owned subsidiary of Bell Helicopter Textron, Inc., is an employer that provides the equipment to perform all phases of helicopter depot maintenance for the U.S. Department of Defense.   Defendant operates a maintenance shop in Ozark, Alabama. Defendant Bell Aerospace Services, Inc. is an "employer" within the meaning of Title VII and the ADA, and is subject to suit under all of the claims alleged herein.

11. Defendants are subject to personal jurisdiction in the State of Alabama for the purpose of this lawsuit.


### IV.    FACTUAL ALLEGATIONS

12. On December 6, 1999, Plaintiff was hired to work as a full-time aircraft mechanic at Defendants' maintenance facility in Ozark, Alabama.

13. Plaintiff's starting salary was approximately $12.00/per hour.

14. Bob Nestler, a white male, was Plaintiff's supervisor.

15. As a mechanic, Plaintiff was awarded overtime on a frequent basis.

3

16. In April 2000, Plaintiff was selected as the Employee of the Month.

17. On or about August 2001, Plaintiff was transferred to work in Defendants' Avionics Electrical Instrument ("Avionics") section to assist with the backlog.

18. Plaintiff was selected because of his background in avionics.

19. Jim Ellis, a white male, became Plaintiff's supervisor.  Mr. Donahue, a white male, was Ellis' supervisor.

20. Plaintiff was scheduled to work in Avionics until the backlog cleared.  After this occurred, he would be transferred back to his position as an aircraft mechanic.

21. Plaintiff was the only African American employee in Avionics.  Plaintiff remained in this section for the remainder of his employment with Defendants.

22. In Avionics, employees were required to refurbish helicopters based on the customer's specification which included replacing instruments, wiring, and installing antennae and/or other electrical components.

23. Ellis was responsible for giving assignments to permanent and contract employees working in Avionics.

24. On several occasions, Ellis demonstrated his racial animus towards African Americans and Plaintiff by the assignments that he gave employees.

25. Ellis assigned all of the less desirable jobs to Plaintiff.

26. For example, the entire time that Plaintiff worked in this section, he was the only employee that was assigned to clean the shop area and to make coffee for the employees.

4

27. On several occasions, Plaintiff complained about the cleaning assignments.

28. Ellis responded to these complaints by telling Plaintiff that he "did such a good job cleaning."

29. Plaintiff felt humiliated and degraded by this explanation.

30. Ellis refused to give cleaning assignments to any of the white employees.

31. Plaintiff continued to complain about the cleaning assignments and Ellis would provide him with the same response.

32. When Plaintiff attempted to speak with Mr. Donahue about the assignments, Donahue ignored Plaintiff. Donahue would walk by Plaintiff as if he did not exist and proceed to speak with other white employees in the same area.

33. Plaintiff felt uneasy and uncomfortable by Donahue's behavior.

34. Plaintiff requested to be transferred back to his position as an aircraft mechanic so that he could receive better assignments, better treatment and overtime. Plaintiff brought his request to Ellis and Nestler, his former supervisor.

35. Ellis refused to allow Plaintiff to be transferred, telling Nestler that Plaintiff was a good employee and that he did not want to lose him.

36. Overtime was awarded based on the aircraft and the employees assigned to work on it that particular day.

37. Ellis frequently assigned installation tasks to the white employees.

38. Ellis intentionally assigned Plaintiff tasks that would not require overtime work. For example, Ellis would also assign Plaintiff the task of removing the wiring out of the aircraft, another cleaning assignment.

39. When an aircraft was brought into the Avionics section, the wiring and any excess equipment had to be removed from the aircraft before any installation tasks could be performed.  At this stage, the aircraft was usually dirty.

40. Ellis refused to assign this task to any other employee.

41. Ellis commended Plaintiff for being able to work an entire aircraft by himself and quicker than any other employee.

42. Plaintiff was not flattered by Ellis' remarks because the removal of wiring and excess equipment did not require any particular skill.

43. Plaintiff continued to request different assignments, including installation tasks that were more challenging and tasks that would provide him with the opportunity to have overtime.  Ellis refused to assign Plaintiff different tasks despite the fact that Plaintiff was capable of performing said tasks in a satisfactory manner.

44. White employees were allowed to work overtime despite their job assignment.   For example, Jim Donahue ("Big Jim"), a white male, was allowed to work overtime even when he was not assigned to a particular aircraft.

45. On one occasion, "Big Jim" was removing wiring with Plaintiff but was allowed to work overtime.  However, Plaintiff was not allowed to work overtime.

46. Additionally, Ron Redd, a white male, was assigned to inventory modification kits but was allowed to stay and work overtime on an aircraft that had been assigned to another employee.

47. Debbie Ellwood, a white female, was also allowed to work overtime as often as she liked although her daily assignments did not require her to do so.

48. During Plaintiff's tenure in Avionics, he received only three hours of overtime.

49. Plaintiff complained to Ellis about the lack of overtime hours.

50. Ellis refused to give Plaintiff duties that would require him to work overtime.

51. Ellis also refused to give overtime hours to Josephine Yvette Williams, an African American female.  Williams had been hired to work with testing and was briefly assigned to the avionics section.

52. Williams was responsible for testing wiring harnesses.  Testing was considered to be a prestigious assignment.

53. Williams also complained to Ellis about the lack of overtime hours.

54. However, instead of giving Williams overtime hours, Ellis instructed Williams to train Debbie Ellwood on the testing procedures.  Shortly thereafter, Ellwood replaced Williams as a tester.

55. As a result, Williams resigned because of the discriminatory treatment, including being replaced by a white female and the denial of overtime hours.

56. Plaintiff filed a charge of discrimination with the EEOC regarding the lack of overtime hours.

57. Ellis was aware of Plaintiff's charge and continued to assign him cleaning tasks and
    deny him overtime work.    Ellis also began to retaliate against Plaintiff.  For example,
    when Plaintiff walked across the hanger, Ellis would admonish him for speaking to
    African American employees in other sections.  White employees were not
    admonished for speaking to other white employees.

58. Although Ellis described Plaintiff as an excellent employee and complimented him on
    his work performance, Plaintiff received lower ratings on his evaluations than
    similarly situated white employees solely because of his race.

59. Ellis also refused to provide Plaintiff with opportunities for advancement.

60. For example, when new modifications for the electrical information for the aircrafts
    were introduced in the section, Ellis did not allow Plaintiff to be trained or exposed to
    the information. Instead, Ellis allowed only white employees to be exposed and
    trained on the information.

61. Ellis knew that denying Plaintiff the opportunity to be exposed to this information
    would limit his growth and other employment opportunities.   As such, when Plaintiff
    often requested to handle more challenging assignments, Ellis would not allow him to
    do so.

62. On several occasions, Plaintiff saw the phrase, "KKK is still alive" written on the
    walls of the restroom.

63. Plaintiff was disturbed by this phrase and felt threatened by the fact that it had
    appeared in the workplace.

64. Plaintiff discussed the fact that the phrase had been written on the walls of the restroom with other African American employees who likewise felt threatened and disturbed by the occurrence.

65. Plaintiff and other African American employees reported the phrase to management.

66. Management did not take any effective steps to investigate or otherwise address this language.  Management merely painted over the phrase each time that it appeared.

67. Near the end of his employment, Plaintiff told Ellis that he was taking Remeron, a prescription medicine for depression, and that drowsiness was one of the side effects of this medication.

68. Plaintiff asked Ellis for special consideration and/or an accommodation.

69. Specifically, Plaintiff requested to have more challenging assignments that would ensure that he would stay busy throughout the entire day.

70. Ellis acknowledged Plaintiff's medical information, but did not request any additional information about his disability or treatment, or provide him with any instructions. Ellis provided no feedback to Plaintiff.

71. Ellis was also aware that Plaintiff had participated in an alcohol and drug program and had received treatment for same while working in the Avionics section.

72. Kim Durden, a white female, was the human resources manager.

73. Durden was aware of Plaintiff's participation in and treatment for alcohol and drug related problems because she had to verify his insurance coverage.

9

74. Because of the side effects of the medication, Plaintiff constantly reminded Ellis that he was taking the drug.  With the medication, Plaintiff was able to perform his job, but the side effects of the medication required reasonable accommodation from Defendants.

75. Defendants made no effort to provide reasonable accommodation for Plaintiff.

76. Plaintiff was unlawfully terminated on August 3, 2005, allegedly after he was observed nodding.  At the end of Plaintiff's shift, he was told that he was being terminated for sleeping on the job.

77. Plaintiff was shocked by his termination because he had previously explained the side effects of his medication to his supervisor and requested an accommodation.

78. Karen Karba, an African American secretary who worked in the same area with Durden, overheard Durden tell Donahue, "There's your chance to get [Britt]" when it was reported that he had been nodding.

79. Defendants fired Plaintiff without providing him with a reasonable accommodation.

80. On at least two occasions immediately after his termination, Plaintiff provided Defendants with a doctor's excuses which indicated that one side effect of his prescription medication was drowsiness and asked to be reinstated to his position.

81. Defendants refused to reinstate Plaintiff.

82. Plaintiff's job duties are believed to have been reassigned to a person or persons without a disability or a perceived disability or a record of impairment or a serious

medical condition, who have not opposed discrimination, or filed a charge with the EEOC.

83. Plaintiff is substantially impaired in several major life activities. However with medication and treatment, Plaintiff is able to overcome impairment of other major life activities.

84. Plaintiff is able to perform the essential functions of his job and was able to do so prior to his termination.

85. Other white employees were observed sleeping on the job at the same time as Plaintiff, however these employees were not terminated or otherwise disciplined.

86. Lewis Carter, an African American male employed as a mechanic with Defendants, observed other white employees sleeping on the job at the same time as Plaintiff. Carter did not observe any white employee being terminated for sleeping on the job.

87. Another example of the difference in the way Plaintiff was treated in comparison to similarly situated white employees is in the area of discipline.

88. For example, Langman, a white mechanic, was involved in an altercation with Bill Riley, a white aircraft inspector. Langman was not terminated, but received a two week suspension. Riley was not disciplined or otherwise reprimanded.

89. Since that time, Langman has been promoted to a lead mechanic position.

90. Huey, a white male, tested positive for drugs and was suspended for one month. He was allowed to return to work thereafter.

11

91. Shortly before Plaintiff's termination, Kevin Brian, a white male aircraft inspector, was observed sleeping on the job. Brian was allowed to return to his position following a one day suspension after providing Defendants with a doctor's excuse which indicated that he was taking a prescription drug that caused drowsiness.

92. Plaintiff's treatment is part of a pattern and practice of racial discrimination which includes the denial of overtime hours as compared to the hours granted to white employees, the hostile work environment based on race, the termination of employment, and other adverse terms and conditions of employment.

93. A racially discriminatory work environment existed from the time of Plaintiff's hire throughout his employment.

94. Plaintiff believes that racial discrimination is the standard operating procedure at Defendants' facilities.

95. Plaintiff was denied reasonable accommodation and terminated because of his disability, and/or because of the perception of a disability by Defendants, and/or because of his record of impairment in violation of the ADA.

96. Further, Plaintiff has been discriminated against and retaliated against in the terms, conditions and privileges of employment, as stated above, based on his race and because he filed an EEOC charge and because he opposed race discrimination.

97. Plaintiff was directly affected by said discriminatory and retaliatory practices and by being deprived of the opportunity to work in an environment free of racial discrimination and retaliation. Such discrimination and retaliation denied Plaintiff the

right to work in a racially integrated work environment and otherwise affected his

opportunity for enjoyment of work as compared to white employees.

98. As a result of said injury and damage, Plaintiff is entitled to back pay with interest,

reinstatement to full-time employment at a proper location with proper work

assignments, front pay, and compensatory and punitive damages, attorneys' fees and

costs.

## V.  STATEMENT OF CLAIMS

### CLAIM ONE
### VIOLATION OF TITLE VII, 42 U.S. C.  § 2000e *et seq.*
### (Discrimination on the Basis of Race)

99.    Plaintiff realleges the above paragraphs as if fully set out herein.

100.    Plaintiff is a member of a class protected by 42 U.S.C. § 2000e *et seq.*, and is

qualified for employment with Defendants.

101.    The conduct of Defendants, as set forth above, constitutes unlawful discrimination

against Plaintiff on the basis of race, in violation of Title VII of the Civil Rights

Act of 1964, 42 U.S.C. § 2000e *et seq.*, and is part of Defendants' pattern and

practice of discrimination on the basis of race. Plaintiff was denied a work

environment free of discrimination in violation of 42 U.S.C. §2000e *et seq.*, *as

amended*, 42 U.S.C. § 1981a, and was not given equal opportunity in the terms

and conditions of his employment.

102.   Defendants' said treatment of Plaintiff on the basis of race altered the terms and conditions of Plaintiff's employment and unreasonably interfered with Plaintiff's opportunity and ability to perform his job.

103.   As a direct and proximate result of said acts, Plaintiff has suffered and continues to suffer loss of employment, loss of promotion opportunities, loss of income, loss of other employment benefits, mental and emotional distress, humiliation, loss of self esteem, depression, expense, embarrassment, and damage to his reputation.

**CLAIM TWO**
**RETALIATION UNDER TITLE VII, 42 U.S.C.§ 2000e-3(a)**
**(Retaliation)**

104.   Plaintiff adopts and realleges the above paragraphs as if fully set out herein.

105.   The conduct of Defendants, as set forth herein, constitutes unlawful retaliation against Plaintiff for his having filed an EEOC charge and for having opposed discriminatory treatment based on race, in violation of Title VII and 42 U.S.C. § 1981a.

106.   As a direct and proximate result of said acts, Plaintiff has suffered and continues to suffer loss of employment, loss of promotion opportunities, loss of income, loss of other employment benefits, mental an emotional distress, humiliation loss of self esteem, depression, expense, embarrassment, and damage to his reputation.

## CLAIM THREE
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### 42 U.S.C. § 12101 *et seq.*
### (Discrimination on the basis of a disability)

107.    Plaintiff adopts and realleges the above paragraphs as if fully set out herein.

108.    Plaintiff was discriminated against in the terms and conditions of his employment
because of his disability and/or record of disability and/or being regarded as
having such an impairment, as defined by the U.S.C. §12102(2).

109.    The adverse treatment was unrelated to job performance.

110.    There was no legitimate or lawful reason to take severe adverse employment
actions against Plaintiff, including but not limited to the termination of Plaintiff's
employment, or to deny Plaintiff reasonable accommodation.

111.    Because Plaintiff's record of impairment, his being regarded as disabled, and his
disability as defined in the ADA were motivating factors and made a difference in
the adverse decisions at issue, including to terminate Plaintiff and to engage in a
pattern and practice of discrimination, Defendants violated the ADA with
knowing or reckless disregard of Plaintiff's rights under the Act.

112.    As a direct and proximate result of said acts, Plaintiff has suffered and continues
to suffer loss of employment, loss of promotion opportunities, loss of income, loss
of other employment benefits, mental and emotional distress, humiliation, loss of
self esteem, depression, expense, embarrassment, and damage to his reputation.

**CLAIM FOUR**
**VIOLATION OF 42 U.S.C. § 12203**
**(Retaliation In Violation of the ADA)**

113.    Plaintiff adopts and realleges the above paragraphs as if fully set out herein.

114.    Plaintiff was willfully retaliated against for seeking reasonable accommodation

and for opposing discrimination, in violation of the ADA, 42 U.S.C. §12203.

115.    Defendants willfully retaliated against Plaintiff for seeking reasonable

accommodation, and Defendants interfered with Plaintiff in the exercise and

enjoyment of, and on account of his having exercised and enjoyed the rights

granted and protected by the ADA.

**CLAIM FIVE**
**VIOLATION OF 42 U.S.C. § 1981**
**(Discrimination and Retaliation on the Basis of Race)**

116.    Plaintiff adopts and realleges the above paragraphs as if fully set out herein.

117.    Plaintiff is a member of a class protected by 42 U.S.C. §1981 and is qualified for

employment with Defendants.

118.    The conduct of Defendants, its agents and employees constitutes unlawful

discrimination and retaliation against Plaintiff on the basis of race, in violation of

42 U.S.C. § 1981, and constitutes part of Defendants' pattern and practice of

retaliation and discrimination on the basis of race.

119.    As a direct and proximate result of said acts, Plaintiff has suffered and continue to

suffer loss of employment, loss of promotion opportunities, loss of income, loss of

other employment benefits, mental and emotional distress, humiliation, loss of self esteem, depression, expense, embarrassment, and damage to his reputation.

## CLAIM SIX
## NEGLIGENT SUPERVISION AND TRAINING

120.    Plaintiff adopts and realleges the above paragraphs as if fully set out herein.

121.    This is a claim arising under the law of the State of Alabama claiming that Defendants committed the tort of negligent supervision and training.

122.    At all relevant times, the Defendants were and continue to be responsible for the training and supervision of its supervisors and management personnel.

123.    The conduct of the Defendants, as set forth above, was a breach of said Defendants' duty to Plaintiff to exercise care in supervising and training employees, and such breach proximately caused Plaintiff to be discriminated and retaliated against, suffer humiliation, mental pain and anguish, and all other injuries outlined herein, all to Plaintiff's damage.

## CLAIM SEVEN
## NEGLIGENT RETENTION

124.    Plaintiff adopts and realleges the above paragraphs as if fully set out herein.

125.    This is a claim arising under the law of the State of Alabama claiming that Defendants committed the tort of negligent retention.

126.    The conduct of the Defendants, as set forth above, was a breach of its duty to Plaintiff to exercise care in retaining employees, and such breach proximately

17

caused him to be discriminated and retaliated against, suffer humiliation, mental

pain and anguish, and all other injuries outlined herein, all to Plaintiff's damage.

## CLAIM EIGHT
## NEGLIGENCE

127.    Plaintiff adopts and realleges the above paragraphs as if fully set out herein.

128.    This is a claim arising under the law of the State of Alabama claiming that

Defendants committed the tort of negligence.

129.    Defendants, by their actions and omissions, breached the standard of care owed to

Plaintiff while an employee of said Defendants.

130.    The conduct of Defendants, as set forth above, was a breach of its duty to Plaintiff

to exercise due care, and such breach proximately caused him to be discriminated

and retaliated against, suffer humiliation, mental pain and anguish and all other

injuries outlined herein, all to Plaintiff's damage.


## VI.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment against

Defendants:

(a)    Declaring that the acts and practices complained of herein are in violation of Title

VII, 42 U.S.C. §§ 1981, 1981a, & 2000e *et seq.*, the Americans with Disabilities

Act, 42 U.S.C. § 12101, *et seq.*, 42 U.S.C. §1981a, and state tort law;

(b)    Enjoining and permanently restraining the above violations;

(c)     Ordering Defendants to make Plaintiff whole by reinstating Plaintiff, providing appropriate front pay, back pay and interest thereon, and reimbursement for lost compensation, social security, prejudgment interest, and all other entitlements and emoluments in an amount to be shown at trial, and other affirmative steps immediately to eliminate the effects of the discriminatory practices complained of herein; and 42 U.S.C. §12205.

(d)     Granting to Plaintiff reasonable attorneys' fees, expert fees, costs, and expenses incurred herein, 42 U.S.C. §§ 1988 & 2000e-5(k); and 42 U.S.C. §12205.

(e)     Granting to Plaintiff compensatory and punitive damages to the extent permitted by law;

(f)     Retaining jurisdiction over this action until the Defendants have fully complied with the Orders of this Court and requiring said Defendants to file such reports as may be necessary to supervise such compliance;

(g)     Ordering Defendants to adopt and strictly enforce written rules prohibiting discrimination and retaliation in the workplace; that such rules provide for the prompt and appropriate investigation of all related complaints; and that such rules require formal disciplinary action to be taken against any employee or agent found to have engaged in such discrimination or retaliation against any employee;

(h)     Granting such other, further, and different relief to Plaintiff which it may deem proper.

Respectfully submitted this  17th  day of  September, 2007.

                                        /s/ Maricia Woodham_____
                                        MARICIA WOODHAM (*BEN050*)
                                        Attorney for Plaintiff


                                        /s/ M. Wayne Sabel_____
                                        M. WAYNE SABEL (SAB002)
                                        Attorney for Plaintiff


**OF COUNSEL:**

Sabel & Sabel, P.C.
Hillwood Office Center
2800 Zelda Rd.; Suite 100-5
Montgomery, AL 36106
TELEPHONE:         (334) 271-2770
FACSIMILE:         (334) 277-2882


# JURY DEMAND

Plaintiff respectfully demands a trial by jury on all issues so triable.

                                        /s/ Maricia Woodham_____
                                        MARICIA WOODHAM
                                        One of the Attorney's for Plaintiff